FILED

JUL 01 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

1 | THOMAS L. REED
KAREN  C. REED
2 | 29006 BROOKINGS LANE
HIGHLAND, CA 92346
3
Phone No. (909) 649-2120
4 | Fax. No.  (909) 362-5127

5 | Chapter 11 Debtors,
in Pro Per
6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      RIVERSIDE DIVISION

11

12 | In re :                    ) B.K. Case No. 6:09-bk-36729 TD
                               )
13 |    THOMAS L. REED          ) CHAPTER 11
                               )
14 |    KAREN  C. REED          ) CHAPTER 11 DEBTORS' RESPONSE TO
                               ) BANKRUPTCY COURT'S " ORDER TO
15 |       Debtors,in Pro Per   ) SHOW CAUSE WHY CASE SHOULD NOT
                               ) BE DISMISSED OR CONVERTED "
16                             )
                               )
17                             ) Date of Hearing: July 15, 2010
                               ) Time of Hearing: 10:00 A.M.
18                             ) Location      : Ctrm. 225
                               ) Address       : 3420 Twelfth Street
19                             )                  Riverside,CA 92501
                               )
20                             )

21

22         Chapter 11 Debtors herein, THOMAS L. REED and KAREN C.

23  REED, respectfully submit their CHAPTER 11 DEBTORS' RESPONSE

24  TO BANKRUPTCY COURT'S " ORDER TO SHOW CAUSE WHY CASE SHOULD

25  NOT BE DISMISSED OR CONVERTED "  , as follows :

26

27

28

1    I. <u>PRELIMINARY RESPONSE AND ARGUMENT</u>

2

3    (a)-  The written "basis" for this honorable Bankruptcy

4    Court's subject " <u>ORDER TO SHOW CAUSE WHY CASE SHOULD NOT</u>

5    <u>BE DISMISSED OR CONVERTED</u> " , consisting of less than

6    one-half page and a mere 11 lines, seems very sketchy,

7    repetitive , subjective and conclusory . There is no

8    citation to any Bankruptcy Code Section , any Bankruptcy

9    Rule , any Bankruptcy Court Case , any U.S.Trustee Guideline,

10   or any objective standard whatsoever . It consists almost

11   entirely of this honorable Bankruptcy Court's conclusions

12   and opinions after two short, sketchy , incomplete, confusing,

13   and inconsistent Hearings ( on April 22, 2010 and June 10,

14   2010 ), many of which are arguable, if not entirely incorrect.

15   At the very least, this subject "...ORDER TO SHOW CAUSE.." is

16   very premature, by any objective standard . <u>Note</u>: Pursuant to

17   the BAPCPA,passed in 2005 , a"Small Business Debtor"has a

18   total of at least 300 days to file a Plan (Section 1121(c)).

19

20   (b)-   It should be duly noted that the Debtors in this present

21   Chapter 11 case have managed to file two extensive DISCLOSURE

22   STATEMENTS and PLANS OF REORGANIZATION ( Original and First

23   Amended ) within <u>6 months</u>  ( by May 5, 2010 ) of the Petition

24   Filing Date ( November 5, 2009 ) . How can this be rationally

25   or objectively considered to be <u>not</u> "...working effectively

26   toward reorganization...." and "... no material progress

27   toward a satisfactory disclosure statement."? ( Per O.S.C. )

28   Note that at the Hearing on April 22, 2010,this Court

-2-

1   complimented these Debtors' " DISCLOSURE STATEMENT " and

2   " PLAN OF REORGANIZATION " as being " very well written.."

3   and " ...providing a great deal of information..." . Any

4   miscommunication or misunderstanding at the subsequent

5   Hearing on June 10, 2010 does not change these <u>facts</u> .

6   These Debtors have,in fact, made substantial , satisfactory,

7   and more than adequate ".. progress toward a satisfactory

8   Disclosure Statement ..." and have, and will continue to

9   work ".effectively toward reorganization..." , no matter

10  what obstacles are placed in our way . To paraphrase our

11  own Vice-President,"..This is a very big deal.." . This is

12  our life, our retirement, and our children's future. As this

13  honorable Court discussed at the last Hearing, a Chapter 11

14  Proceeding is a very long and complicated process. One bad

15  day or Hearing, on the part of the Debtors, the Creditors,

16  or the Judge , should not be allowed to derail this long

17  journey .

18

19  (c)- The Debtors' recollection ( without the benefit of a

20  transcript at this date ) is that this honorable Court made 4

21  "comments" or "observations" at the short Hearing on April 22,

22  2010, regarding our " DISCLOSURE STATEMENT " and " PLAN OF

23  REORGANIZATION "  ( not described as " deficiencies" at that

24  time ), after making the compliments noted on page 2 preceding.

25  In response to these "comments" by the Court, these Debtors

26  quickly prepared and filed their " FIRST AMENDED DISCLOSURE

27  STATEMENT " and " FIRST AMENDED PLAN OF REORGANIZATION "  on

28

1

2    May 5, 2010 ( required to be filed 36 Calendar Days before

3    the scheduled Hearing Date of June 10,2010 ,pursuant to

4    L.B.R. 3017-1 ), making at least six individual changes to

5    the original " DISCLOSURE STATEMENT " and " PLAN OF

6    REORGANIZATION " as suggested by the Court in its "comments"

7    during the April 22, 2010 Hearing . One "comment" had to do

8    with a legal issue concerning the " cramdown " of a loan

9    secured by the Debtors' present principal residence (home),

10   which had to be researched further, and could not be fully

11   addressed within the short notice imposed ( by May 5, 2010 ).

12   This will be addressed in the " Second Amended Disclosure "

13   to be filed shortly ( After this required "..Response to

14   Order to Show Cause ..." ) .

15

16   (d)-   One of the Four"comments" made by the Court at the

17   April 22, 2010 Hearing consisted of a "suggestion" that we

18   further establish our income and ability to pay by attaching

19   copies of various Schedules and Forms from Debtors' Personal

20   Federal Income Tax Returns. Instead of strictly complying

21   with what was presented as more of a "suggestion" than an

22   "Order", in our " FIRST AMENDED DISCLOSURE STATEMENT " ( at

23   page 11 ) we reported our Schedule "C" -Gross Receipts for

24   the last three years. We sincerely believe that to compel us

25   to disclose copies of our Personal Federal Income Tax Returns

26   to all of our Creditors and anyone who wants to look it up, is

27   a complete violation of our rights to privacy with respect to

28   an inherently private document between the Taxpayer and the

-4-

Internal Revenue Service, to be utilized only to determine

taxes owed, is highly improper, and possibly a violation of

Federal Law ( For example: I.R.S. employees can be summarily

terminated if they disclose anything from a Tax Return to an

unauthorized third party ). In any case, a Tax Return for a

self-employed person is largely unreliable and irrelevant as

an indicator of "cash flow" and "ability to pay" since it

includes many non-cash "expenses" ( Example: "Depreciation" )

and allocations of"personal expenditures" such as the " office-

in-home " deduction and the optional method for deducting

" auto expense " ( 55¢ a mile for 2009 ) , factors which would

only "confuse" the "average,reasonable" creditor, and not

enlighten them .  These Debtors' "Gross Receipts" disclosure

should be enough, since they have cut their business expenses

" to the bone " as part of their " Reorganization "   ( $ 200-

$ 300- a month approximately, other than the amount to be paid

for advertising ).

(e)- At the next Hearing on June 10, 2010 , after a rather

ordinary and "boilerplate"  OBJECTION TO DISCLOSURE STATEMENT

was filed by Secured Creditor ( Real Estate Loan ) , ONE WEST

BANK ( basically claiming " inadequate information " ), the

honorable Bankruptcy Court seemed to turn 180% against these

Chapter 11 Debtors, for reasons still not entirely clear ( like

the audio and video reception on the equipment Riverside Debtors

are compelled to utilize for L.A. Court Judges ) . At times it

1

2  seemed like the Court was confusing our case with another case.

3  The Court angrily alleged that these Debtors had not responded

4  in any way to his four "comments" at the last Hearing, on

5  April 22, 2010 ( which had apparently become "deficiencies",

6  or even "Orders" in the interim ). This, of course, was not the

7  case, per the previous discussion at Paragraphs (c) and (d)

8  preceding . The Court then instructed us to use " First

9  Amended ", etc. when we file amended " DISCLOSURE STATEMENTS ",

10  then realizing that we had already done so, withdrew this

11  comment .

12      The Court then raised the Legal Issue of the " ABSOLUTE

13  PRIORITY RULE " for the first time ( it was never mentioned

14  at the previous Hearing, on April 22, 2010 ), stating that it

15  had been violated by our proposed "DISCLOSURE STATEMENT" and

16  " PLAN OF REORGANIZATION ", which , the Court stated , would

17  bar us from the approval of our " FIRST AMENDED DISCLOSURE

18  STATEMENT " and the confirmation of our " FIRST AMENDED PLAN

19  OF REORGANIZATION ". In making these decisions, the Court

20  seemed to be unaware of the fact that since the passage of

21  the BAPCPA in 2005 and its amendments to 11 U.S.C. Section

22  1129(b)(2)(B)(ii) , the "ABSOLUTE PRIORITY RULE " has been

23  ruled to be no longer applicable to an Individual Chapter 11

24  Debtor's  retention of all types of property ; Please see:

25  In re Tegeder  369 B.R. 477 (Bkrtcy.D.Neb.2007 ) ; In re

26  Roedemeier , 374 B.R. 264 (Bankr.D.Kan.2007); and further review

27  the commentary listed at II. LAW following, including ; 4 Norton

28  Bankruptcy Law & Practice  2d, Chapter 84A:1 ; Bankruptcy

-6-

1 | <u>Practice for the General Practitioner</u>  Chapter 12:27 n.28 ;

2 | and <u>3 Bankruptcy Practice Handbook</u> Chapter 14:152 n.1( 2d ed.).

3 |

4 | (f)- At the end of the June 10, 2010 Hearing, the honorable

5 | Bankruptcy Court Judge , with great flair , announced that he

6 | was "rejecting" Debtors' " FIRST AMENDED DISCLOSURE STATEMENT ",

7 | and further that an " <u>ORDER TO SHOW CAUSE WHY CASE SHOULD NOT</u>

8 | <u>BE DISMISSED OR CONVERTED</u> " was going to be issued by the

9 | Court , and a Hearing <u>RE: O.S.C.</u>  would be heard on July 15,

10 | 2010 . This amounts to the Court attempting to basically

11 | " pull the plug " on these Debtors' subject Chapter 11, into

12 | which they have put an enormous amount of "blood, sweat , and

13 | tears ", we would argue <u>very</u> prematurely, based on little more

14 | than one "boiler-plate" objection by one creditor ( out of

15 | more than 30 creditors; all others <u>not</u> objecting ) which was

16 | basically asking for more "adequate information", and the

17 | Court's own "comments", "observations" , and "objections", many

18 | of which, we would argue , respectfully, are incorrect ,

19 | factually and/or legally as we have discussed herein ; in

20 | particular the " ABSOLUTE PRIORITY RULE " , which seems to be

21 | weighed heavily , and relied upon greatly , by this Court in

22 | making this decision ( Rejection of " FIRST AMENDED DISCLOSURE

23 | STATEMENT " and the " O.S.C." ), even though, as discussed at

24 | length at Paragraph (e) preceding and at <u>II.LAW</u> at pages 12-14,

25 | this issue no longer even <u>exists</u> for a Chapter 11 Individual

26 | Debtor, after the passing of the BAPCPA in 2005 . All of this

27 | is not correct, proper , or equitable and should not happen at

28 | all <u>or</u>  be allowed to stand on Appeal !

-7-

1   (g)- This honorable Bankruptcy Court, sitting in "equity ",

2   should not be so quick to "ignore"the rights of these Debtors,

3   ( who have done nothing "wrong" or "inequitable" here, other

4   than pursuing the " American Dream " by holding real estate

5   while the market price dropped some 40% to 50% ) to a fair and

6   equitable Chapter 11 Bankruptcy Reorganization,in favor of

7   the "rights" of Creditors , secured by Real Estate , who have

8   either been " very bad actors " in the recent , ongoing " Real

9   Estate Debacle " , which has brought this country to the very

10  edge of economic ruin, or have been willing and knowing

11  successors in interest to such " bad actors";  attempting to

12  profit mightily from the " bad acts " of others, as follows :

13

14  (1)- Note that the former C.E.O. and founder of Countrywide

15  Loans, Angelo R. Mozilo , has been criminally indicted and

16  named in hundreds of civil lawsuits . Bank of America , in

17  late 2008 , bought all of Countrywide's assets, for about

18  6 billion dollars , merely pennies on the dollar for all

19  of Countywide's Loans , including these Debtors' . These

20  Debtors' Countrywide Loan ( for 30979 Granite Street )

21  eventually was taken over by Wells Fargo ( after Bank of

22  America ) , which now has " Relief from Automatic Stay "

23  Motion pending before this Court , having executed an

24  " Assignment of Deed of Trust " a mere two days before

25  filing their " Motion " !

26

27  (2)- Indymac Bank was taken over by the Federal Government

28  in 2008 due to huge losses and very bad loans ( Indymac was

1    originally a "Spin-off" Corporation from Countrywide

2    Loans in 1997 ).The assets of Indymac were eventually

3    sold by the U.S. Government ( indirectly ) to a new

4    Corporation, One West Bank , which was set up by a

5    number of very wealthy investors ( including George

6    Soros and reportedly Michael Dell ) for the sole

7    purpose of profiting from the bad loans made by Indymac

8    ( and some good ones ), which they had acquired at a

9    steep discount from the U.S. Government .

10

11   (3)- In enforcing its rights under the loans obtained

12   from Indymac , One West Bank has taken a much more

13   aggressive and, some argue , illegal approach to

14   foreclosing on properties . On November 25, 2009 a judge

15   in Long Island, New York penalized One West Bank for

16   their " harsh , repugnant , shocking , and repulsive

17   actions " in trying to work out a distressed mortgage,

18   by cancelling the debt in favor of the borrower , a

19   loan of about $ 560,000- ! ( Horoski vs. One West Bank,

20   et al , Suffolk County, New York Courthouse; Judge

21   Jeffrey Spinner ). In December 8, 2009 One West Bank

22   worked with the Sheriff's Department to change the locks

23   on a distressed home, despite agreeing to work with the

24   borrower just 8 days prior . This was done without any

25   court actions, which bypasses acknowledged and mandated

26   Due Process on home foreclosures ( Leslie Parks, 3749

27   Park Avenue, Minneapolis, MN ; Housing Court ; Poor

28   People's Economic Human Campaign; C/O Lynette Malles ).

-9-

1   <u>Note</u> :  One West Bank, just discussed , is the one creditor

2   which has filed an " OBJECTION TO (FIRST AMENDED) DISCLOSURE

3   STATEMENT " ; which Objection was enthusiastically

4   received by the honorable Bankruptcy Court at the last

5   Hearing on June 10, 2010 . With all due respect, this Court,

6   sitting in equity , really should consider the source of

7   that one "OBJECTION TO DISCLOSURE STATEMENT".

8

9   (4)- Some pundits have called Countrywide Loans and

10  Indymac Bank ( <u>Now</u> One West Bank ) the "B.P." of the

11  Real Estate Loan Industry , which most likely understates

12  greatly the true extent of their " bad acts ", which have

13  brought this country's economy to the edge of ruin and

14  Depression , and hurt all Americans greatly, whether or

15  not they are stuck with one of their Real Estate Loans .

16  Does this honorable Bankruptcy Court , sitting in "<u>equity</u>",

17  really want to prematurely "cut-off" these Debtors'

18  right to seek Bankruptcy Court Relief , in the form of

19  a Chapter 11 Bankruptcy Reorganization, offered in "Good

20  Faith " by Debtors, in favor of these Corporate " Bad Boys ",

21  and their knowing and willing " Successors-in-Interest " ,

22  attempting to profit from the bad acts of others ( or their

23  own bad acts ). These Secured Creditors ( with the exception

24  of the Bank of America Home Equity Loan ) are not the

25  original lenders here ; they all acquired their financial

26  interests knowingly , at deep discounts , well after the

27  " Real Estate  Crisis " was known to all ; in an attempt

28  to profit greatly from it .  These are not sympathetic

-10-

characters; they knowingly took a risk in order to profit

greatly . Thus , an attempted " cramdown " of the Real

Estate Loans should not be shocking or surprising to them.

This is merely an attempt to legally and financially

recognize "losses" that have already been recognized by

these Corporate Banks on their books and records , on their

Tax Returns , and in their deeply discounted acquisition

costs for their Real Estate Loans . The Federal Government

and these Corporate Lenders (Banks) have already written

down the value of these properties and have already

recognized the "losses" ( 40% to 50% decline in Real

Estate Values in the Inland Empire over the last four years )

yet they still stubbornly insist on receiving payments

based on the original loans and values , which will ultimate-

ly result in wide-spread abandonment of the involved Real

Estate , ensuring the continuing collapse of the Real

Estate Market , at an intolerable social cost . A workable

" cramdown " procedure is the only feasible way out of

this crisis .

1

## II. LAW

2

3   (a)- AFTER THE PASSAGE OF THE BAPCA IN 2005 (" BANKRUPTCY

4   ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005 " )

5   THE "ABSOLUTE PRIORITY RULE " NO LONGER APPLIES IN INDIVIDUAL

6   CHAPTER 11 CASES  :

7

8   (1)- The Absolute Priority Rule (APR) is a long established

9   principle that in Chapter 11 cases creditors'claims take

10   priority over shareholders' claims . Pre-BAPCPA cases such

11   as In re Gorman, 282 B.R. 45 (Bankr.S.D.Fla.2002) held that

12   retention of even exempt property by an individual debtor in

13   a Chapter 11 Plan violates the absolute priority rule unless

14   unsecured creditors are paid in full . However, recent Court

15   Cases have found that changes made to Chapter 11 by the BAPCPA

16   in 2005 ( Particularly the amendments to SECTION 1129(b)(2)(B)

17   (ii) and new SECTION 1115 ) have created an exception to the

18   "Absolute Priority Rule " for all Individual Chapter 11

19   Debtors . SEE: In re Tegeder  , 369 B.R. 477 (Bkrtcy.D.Neb.

20   2007 ) ; In re Roedemeier  , 374 B.R. 264 (Bankr.D.Kan.2007);

21   as well as the following commentary ; ( 4 Norton Bankruptcy

22   Law & Practice 2d Chapter 84A:1 ; Bankruptcy Practice for the

23    General Practitioner Par 12:27 n.28 ; and  3 Bankruptcy

24   Practice Handbook Par. 14:152 n.1 (2d ed.).

25

26   (2)- In re Tegeder  369 B.R.477 (Bkrtcy.D.Neb.2007) :

27   The Court in Tegeder  held that the new amendments to

28   11 U.S.C. Section 1129(b)(2)(B)(ii) provide an exception

1    to the absolute priority rule for the retention of property

2    by Individual Chapter 11 Debtors and that the " absolute

3    priority requirements imposed by Code Section 1129(b)(2)(B)(ii)

4    were waived by permitting a debtor to retain property included

5    in the estate under Section 1115. " BAPCPA added the following

6    to Section 1129(b)(2)(B)(ii);" ..except that in a case in which

7    the debtor is an individual, the debtor may retain property

8    included in the estate under Section 1115, subject to the

9    requirements of Subsection (a)(14) of this section..". New

10   Section 1115 defines property of the estate to include property

11   specified in Section 541 as well as property acquired post-

12   petition and earnings from services performed post-petition .

13   The court stated that interpreting new Section 1129(b)(2)(B)(ii)

14   any narrower would cause the amendment to have little effect .

15

16   (3)- In re Roedemeier 374 B.R. 264 ( Bankr.D.Kan.2007 ) :

17   In this case, the Chapter 11 Debtor, who was a dentist, proposed

18   a Chapter 11 Plan that would, inter alia , allow him to retain

19   ownership of his interest in his LLC which operated his dental

20   practice and proposed to pay $30,000- on general unsecured

21   claims totaling about $875,000- .

22        The Court noted that prior to the enactment of BAPCPA in

23   2005, the absolute priority rule applied to all Chapter 11

24   debtors, but that BAPCPA added the "except" clause to Section

25   1129(b)(2)(B)(ii) with the addition of the phrase " except that

26   in a case in which the debtor is an individual, the debtor may

27   retain property included in the estate under section 1115..."

28   The Court stated that the "except" clause created an exception

-13-

for Individual Chapter 11 Debtors to the Absolute Priority
Rule. The Court construed this exception and Section 1115
broadly to allow a Debtor to exempt both pre- and post-
petition property under a Plan even though a class of
unsecured creditors are not paid in full . The Court stated
that various changes were made to Chapter 11  ( in the
BAPCPA , passed in 2005 ), including the exception to the
Absolute Priority Rule, so that it could function for the
Individual Chapter 11 Debtors much like a Chapter 13 .

In approving the Debtor's Disclosure Statement, the
Court concluded that Disclosure Statements for smaller
businesses are not required to be as extensive as those for
a medium to large Reorganization which often involve the
issuance of securities . The Court referred to the list for
smaller businesses in 7 Collier on Bankruptcy  , par. 1125.02
(2) at pp. 1125-12 to 1125-13 ( citing In re Malek  , 35 B.R.
443 ( Bankr. E.D. Mich.1983 ).

Note:  What do cases such as Roedemeier and Tegeder  mean
for Individual Chapter 11 Debtors ? First,they remove a potent
tool that in the past has allowed Creditors to exert pressure
for concessions and more favorable Plan treatment. Second,
while not turning Chapter 11 into a sort of " Super Chapter
13." they nevertheless attempt to make the Chapter 11 procedure
more " Chapter 13-like, " if not in application, then in result.
With the increased debt load borne by individuals and the
resulting increase in individuals ineligible for Chapter 13
choosing to file for Chapter 11, these distinctions will prove
to be even more important .

-14-

III. <u>CONCLUSION</u>

(a)- These Debtors, in Pro Per , have made a great effort
to make this Chapter 11 Reorganization work, a very
difficult task for anyone , even the most brilliant attornies
and the greatest Corporate Enterprises , even with the
support of the Federal Government and those in high places
( <u>Example</u> :   General Motors ) . An Original and First
Amended " Disclosure Statement " and " Plan of Reorganization"
were prepared and filed within 6 months of the Petition
Filing Date ( November 5, 2009 ). At the Hearing after the
original filing ( on April 22, 2010 ) the honorable
Bankruptcy Court Judge praised these Debtors' Original
" DISCLOSURE STATEMENT " and " PLAN OF REORGANIZATION"as
being " very well-written " with a " great deal of
information provided ", rare praise for anyone in Federal
Bankruptcy Court, especially " in pro per " Debtors. After
this "praise " , the Court made four specific " comments "
concerning these filings ( not characterized as " deficiencies "
at that time ) which these Debtors listened to carefully and
took notes ( despite the poor audio and visual reception on
the equipment that Riverside, California Debtors are forced
to utilize when they are assigned to a Los Angeles Court
Bankruptcy Judge ),taking it very seriously , resulting in
the preparation and filing of these Debtors' " FIRST
AMENDED DISCLOSURE STATEMENT " and " FIRST AMENDED PLAN OF
REORGANIZATION " on May 5, 2010 .

1

2    (b)- As stated at the last Hearing on June 10, 2010 ,

3    these Debtors have agreed to further amend their " FIRST

4    AMENDED DISCLOSURE STATEMENT " and " FIRST AMENDED PLAN

5    OF REORGANIZATION " , in response to informal contacts

6    from the Internal Revenue Service and the San Bernardino

7    County Tax Collector requesting certain changes in Plan

8    language and provisions to comply with their requirements

9    and desires  ( Per the I.R.S. , the BAPCPA of 2005, at

10   Bankruptcy Code Section 1129(a)(9)(C) requires that priority

11   tax debts be paid through the "Plan" in equal payments

12   over a five (5) year period , beginning at the Petition

13   Filing Date , contrary to the " Confirmation Date effective

14   beginning Date  " insisted on by this honorable Bankruptcy

15   Court at the April 22, 2010 Hearing, as was incorporated

16   into the " FIRST AMENDED " FILINGS ). As part of this

17   pending " SECOND AMENDED DISCLOSURE STATEMENT ", these

18   Chapter 11 Debtors will address all of the "comments " ,

19   "observations" , or "deficiencies" discussed by this

20   honorable Court at the two Hearings , and in the subject

21   " ORDER TO SHOW CAUSE ", as well as those of ONE WEST BANK,

22   ( the only Creditor who has filed any " OBJECTION " to

23   these Debtors' " FIRST AMENDED DISCLOSURE STATEMENT ), and

24   the Office of the U.S. Trustee's Objections ( which were

25   not actually discussed at the last Hearing by any of their

26   Legal Representatives ). This refiling for the " SECOND

27   AMENDED DISCLOSURE STATEMENT " has been delayed, unfortunately,

28

-16-

1

2  due to these Debtors' obligation to respond, at length , to

3  this subject " ORDER TO SHOW CAUSE...." . We will attempt

4  to complete this " SECOND AMENDED...." shortly, before the

5  scheduled July 15, 1010 Hearing .

6

7  (c)- Other than the " Absolute Priority Rule " ( which, per

8  attached Legal Research , at II. LAW : ( pages 12-14 ) ,

9  after the BAPCPA passed in 2005 , is no longer even an issue

10 for Individual Chapter 11 Debtors ), and the " Cramdown "

11 Issue ( to be addressed fully in the " SECOND AMENDED "

12 Filings in process ), the only real issues in the way of

13 approval of the Debtors' " SECOND AMENDED DISCLOSURE

14 STATEMENT " have to do with the amount and type of information

15 to be provided by these Debtors in their " SECOND AMENDED

16 DISCLOSURE STATEMENT ", I.E. ; whether it contains " adequate

17 information " ; a somewhat subjective determination . For

18 example , with respect to the secured creditor , ONE WEST

19 BANK , the only creditor who has filed an " OBJECTION TO

20 FIRST AMENDED DISCLOSURE STATEMENT ", we are quite confident

21 that no amount of information will ever be "adequate"; we

22 could file a 100 page document with 10 years of Tax Returns,

23 a Certified Financial Statement , and our family tree and it

24 still would not be " adequate information " per ONE WEST

25 BANK . Realistically, even a "good faith" , secured by Real

26 Estate , Creditor is going to do everything possible to

27 defeat a proposed "cramdown" Chapter 11 Proceeding, and

28

-17-

1

2    based on everything we have seen, heard , and experienced ,

3    ONE WEST BANK is the epitome of "Bad Faith" , the definition

4    of that term in the modern world ( along with Countrywide

5    Loans and Indymac Bank ; R.I.P. ) . In short, the very worst

6    of a bad lot . If this sounds a bit harsh,talk to Judge

7    Spinner in Suffolk County Courthouse in New York ( see Page

8    9 preceding where he referred to ONE WEST BANK's " harsh,

9    repugnant, shocking, and repulsive actions " ), or any of

10   the many thousands of individuals they have lied to, mislead,

11   stolen from , or harmed in some way . With all due respect ,

12   this Court , sitting in equity , should take into serious

13   consideration the source of the only  Creditor " OBJECTION

14   TO FIRST AMENDED DISCLOSURE STATEMENT ". We Debtors are

15   dependent upon the great wisdom of this Court to discern

16   the difference between a real , "good faith" Objection, and

17   a "smoke screen" or "Kabuki dance" on the part of " ONE

18   WEST BANK ".

19

20   (d) IN CLOSING :  The Debtors/Respondents herein pray that

21   this honorable Bankruptcy Court , in its great wisdom , allow

22   us to continue in this subject Chapter 11 Proceeding to its

23   natural ending , and not "cutoff" prematurely this extensive,

24   complicated legal process based on a bad day , bad and

25   obsolete law , "bad" secured creditors , bad video and audio

26   reception in Riverside Bankruptcy Court, miscommunication ,

27   misunderstandings , personal pique and anger, etc.,etc.

28

-18-

1

2    Instead, we need to attempt to bring this still relatively

3    young case to a fair , just , reasonable , and equitable

4    end , to further the best interests of these Debtors , their

5    Secured and Unsecured Creditors , the Bankruptcy Court and

6    its processes , and the Public at Large . These Debtors

7    will do everything possible to bring this Chapter 11 to a

8    fair and just conclusion , as quickly as they can under the

9    circumstances present in this case . Note that these

10    Debtors prepared and filed two " DISCLOSURE STATEMENTS " and

11    two " PLANS OF REORGANIZATION " ( Original and Amended )

12    within 6 months of the Petition Filing Date ( 11/05/09 ),

13    in a "Pro Per" Status , which seems to have been overlooked

14    in this subject " ORDER TO SHOW CAUSE ". How exactly is this

15    " ...not working effectively toward reorganization ..." or

16    "...... inadequate progress...." ?  We do not understand and

17    do not think that anyone else will either ! We need time here

18    to continue with this " good start " , and to perfect our

19    " DISCLOSURE STATEMENT " and " PLAN OF REORGANIZATION " ;

20    not to have our Legal Rights summarily "cut-off" based on

21    nothing . Thank you for your understanding, consideration ,

22    and wisdom .

23

24    DATED : June 30, 2010         Respectfully submitted ,

25                  By:

26                  THOMAS L. REED, DEBTOR

27

                 KAREN  C. REED, DEBTOR

28

## PROOF OF SERVICE OF DOCUMENT BY MAIL

I am over the age of 18 and not a party to this Bankruptcy Case or Adversary Proceeding . My business address is :

29006 BROOKINGS LANE
HIGHLAND, CA 92346

A true and correct copy of the foregoing document described as : CHAPTER 11 DEBTORS' RESPONSE TO BANKRUPTCY COURT'S " ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED OR CONVERTED "

was served in the manner indicated below :

SERVED BY U.S. MAIL :   On  July 1  , 2010       I served the following person(s) and entity(entities) at their last known address (addresses) in this Bankruptcy Case or Adversary Proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid . SERVICE LIST ATTACHED (1 Page) AT REDLANDS,CA POST OFFICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct .

DATE :  July 1 , 2010     JUSTIN H. REED
                         Typed Name              Signature

## SERVICE LIST

UNITED STATES TRUSTEE
ATTN: EVERETT L. GREEN
3685 MAIN STREET-SUITE 300
RIVERSIDE, CA 92501


UNITED STATES BANKRUPTCY COURT
ATTN: HONORABLE THOMAS B. DONOVAN
3420 TWELFTH STREET-CTRM.225 (2ND FL.)
RIVERSIDE,CA 92501


MC CARTHY & HOLTHUS, LLP
1770 FOURTH AVENUE
SAN DIEGO, CA 92101